1999 SD 55

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Todd HERRBOLDT, Defendant and Appellee.**

**No. 20625.**

Supreme Court of South Dakota.

Argued Feb. 23, 1999.

Decided April 28, 1999.

---

10.  At this point in the proceedings, it even seems strange to me to refer to the defendant as *Mr. Wright.*

Mark Barnett, Atty. Gen., Craig M. Eichstadt, Deputy Atty. Gen., Pierre, for plaintiff and appellant.

Larry F. Hosmer of Hosmer and Kettering, Yankton, for defendant and appellee.

SABERS, Justice

[¶ 1.] State appeals the suppression of Todd Herrboldt's arrest for driving under the influence and resisting arrest. We reverse and remand.

## FACTS

[¶ 2.] The magistrate judge granted the motion to suppress relying on a stipulation of facts by Herrboldt and State. The stipulation states:

On March 5, 1998 several officers of the Yankton Police Department and Yankton County Sheriff were investigating an armed robbery of the Casey's convenience store located at 1000 Whiting Drive, Yankton, South Dakota. At about 11:00 P.M., a few minutes after the robbery took place, the officers were at the scene standing in front of the store. At that time defendant [Herrboldt] drove by on Whiting Drive heading east, and as he passed the officers he honked his horn gaining the attention of the officers. It is not clear the number of times the horn was honked.

Upon seeing the pickup and hearing the horn[,] the scene supervisor instructed [O]fficer Michael D. Burgeson to stop the vehicle. *Officer Burgeson stopped the vehicle to determine if the driver had information about the robbery or involved therein.* Officer Burgeson then proceeded to follow defendant to 1200 East 13th, Yankton, South Dakota, where he was ar-

rested for driving while under the influence.[1]

None of the officers recognized defendant or his pickup before they followed him, and officer Burgeson could not say whether his driver's side window was up or down. There was nothing unusual about the way defendant was driving his vehicle, nor was there any reason to believe there was anything wrong with said vehicle. The only reason he was stopped was because he honked his horn as he drove by the investigation scene, and the officers had no reason to believe defendant had been drinking until he was stopped.

(Emphasis added).

[¶ 3.] Officer Burgeson testified at the preliminary hearing[2] that Herrboldt parked his vehicle in his driveway and exited as he approached him. Herrboldt was uncooperative when asked whether he had any information about the robbery or had been following a possible suspect. Officer Burgeson could smell "an extreme odor of alcoholic beverage on his breath" and observed Herrboldt stagger and sway. Officer Burgeson asked Herrboldt to perform sobriety tests. He refused and attempted to walk away. Based on his observation, Officer Burgeson placed Herrboldt under arrest for driving under the influence. Herrboldt attempted several times to walk away from Officer Burgeson and additional officers were needed to secure him.

[¶ 4.] Herrboldt was charged with driving under the influence and resisting arrest. At the conclusion of the preliminary hearing, the magistrate judge found probable cause to support the charges. Herrboldt made a motion to suppress the arrest and fruits thereof claiming the stop was improper. He told the magistrate judge that he wanted an opportunity to brief the issue and did not want

another hearing on the motion.[3] Briefs and the stipulation of facts were submitted. The magistrate judge granted the motion to suppress finding that "the stop of Defendant's vehicle ... was without authority, and in violation of his rights[.]" State appeals.

## STANDARD OF REVIEW

[¶ 5.] The trial court made its decision based on a stipulation of facts. Therefore, we review under a de novo standard. *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D.1995) (citing *Zacher v. Homestake Min. Co. of Cal.*, 514 N.W.2d 394, 395 (S.D.1994); *State v. Abourezk*, 359 N.W.2d 137, 142 (S.D.1984); *State Auto. Cas. Underwriters v. Ruotsalainen*, 81 S.D. 472, 136 N.W.2d 884, 888 (1965)).

[¶ 6.] **WHETHER LAW ENFORCEMENT HAD A REASONABLE SUSPICION OR SPECIFIC ARTICULABLE FACTS TO STOP HERRBOLDT.**

[¶ 7.] "The stop of an automobile and the detention of its occupants is a seizure within the meaning of the Fourth and Fourteenth Amendments." *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610 (citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Law enforcement may not stop a vehicle without a reasonable suspicion for doing so. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "However, it should be emphasized that the reasonable suspicion required to make a stop is less than the probable cause required to issue a warrant or make an arrest." *Id.* (citing *State v. Lownes*, 499 N.W.2d 896, 898 (S.D.1993)). "The existence of reasonable suspicion is a question of law which is fully reviewable by this Court." *Lownes*, 499 N.W.2d at 898.

1. The stipulation of facts suggests that Herrboldt was stopped and then the officer followed him to his residence where he was arrested. This is incorrect. Officer Burgeson followed the vehicle to 1200 East 13th and made contact in Herrboldt's driveway. *See* n. 2.

2. Herrboldt argues that the preliminary hearing transcript should not be considered by this court because the magistrate judge did not rely on it in making her decision. State claims that the transcript is part of the settled record. In reaching

our decision, we rely on the stipulation of facts only and do not address whether this court could consider the preliminary hearing transcript. We refer to the transcript only to correct and clarify the details of the stop.

3. Counsel for Herrboldt stated at the conclusion of the preliminary hearing: "I don't want to have another hearing on any motion to suppress. I think the facts are the facts as the officer just testified to."

[T]he factual basis required to support a stop for a "routine traffic check" is minimal. . . . All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]"

*Spenner*, 1998 SD 56 at ¶ 14, 580 N.W.2d at 610–11 (alterations in original) (quoting *State v. Krebs*, 504 N.W.2d 580, 585 (S.D.1993)).

■ [¶ 8.] The stop of Herrboldt was "not the product of mere whim, caprice, or idle curiosity." Herrboldt honked his horn while law enforcement officers were investigating the scene of an armed robbery. Under the stipulation, Officer Burgeson had "specific and articulable facts" to stop him to determine whether he had any "information about the robbery or involved therein." " 'A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties.' " *Id.* at ¶ 15, 580 N.W.2d at 611 (quoting *Krebs*, 504 N.W.2d at 585 (citations omitted)).

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972) (citations omitted).

[¶ 9.] Under the circumstances of this case, Herrboldt essentially invited the officers to stop him by honking his horn while driving past them at the scene of an armed robbery. He intentionally drew their attention to him. This is a "stop by invitation." The Constitution is not *intended* to protect individuals from this type of stupidity. Herrboldt's state and federal constitutional rights were not violated by Officer Burgeson stopping him to determine whether he had information about the armed robbery. The trial court erred in suppressing the arrest and the evidence obtained thereby. We reverse and remand.[4]

[¶ 10.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

---

4. Our determination of this issue makes it unnecessary to address the other issues raised by the State.